UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACINTA CASTRO AND SERAPIO CHAVEZ, INDIVIDUALLY AND ON BEHALF OF THEMSELVES AND OTHER SIMILARLY SITUATED PERSONS, KNOWN AND UNKNOWN,<br><br>Plaintiffs,<br><br>v.<br><br>EL MILAGRO, INC.,<br><br>Defendant. | No. 1:22-cv-03943<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jacinta Castro and Serapio Chavez ("Plaintiffs") bring this putative class action against Defendant El Milagro, Inc. ("El Milagro" or "Defendant") alleging that Defendant's timekeeping practices violated Illinois' Biometric Information Privacy Act ("BIPA"). Before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the Court grants the motion in part and denies it in part.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there

is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

During the relevant period, Defendant used two biometric timekeeping systems: the HP-2000 HandPunch timeclock ("HP-2000") and the ADP InTouch 9100 fingerprint timeclock ("InTouch 9100"). Defendant used the HP-2000 from approximately 2004 until it transitioned to the InTouch 9100 in April 2020. R. 111-1 ¶ 12. The HP-2000 uses infrared light and a camera to create a template of an employee's hand. *Id.* ¶ 20. The device then associates that template with an employee's assigned User ID.[1] *Id.* ¶ 14.

To clock in using the HP-2000, employees entered their User ID and then placed a hand on the device which scanned their hand, generating a new template

[1] El Milagro knew the User IDs associated with its workers; the HP-2000 itself did not associate a User ID with an employee's name.

that was compared against the template on file for that User ID. *Id.* ¶ 30. If the comparison between the new template and the template associated with the User ID of record was sufficiently similar, the HP-2000 clocked the employee into their shift. *Id.* ¶ 32. Defendant selected the HP-2000 in part because it believed the hand-matching feature would discourage employees from punching other employees in or out. *Id.* ¶ 11.

In 2019, Defendant implemented two documents concerning employee biometric data: a Timekeeping and Biometric Privacy Policy ("Policy") and a Biometric Consent Form ("Consent Form"). Both were available in English and Spanish, and existing employees were informed about the Policy. *Id.* ¶¶ 53, 58–59. The Policy stated that Defendant had implemented a "fingerprint system" for timekeeping purposes and set forth rules governing the collection, use, retention, and destruction of employees' biometric identifiers and information. R. 101-16. Among other things, it provided that such information would be retained for three years after employment and then destroyed. *Id.* The English-language Policy, however, also referred elsewhere to the biometric identifier used by the timekeeping system as a "handprint." *Id.*

The Consent Form separately informed employees that their biometric information would be used to identify them and record their working time, would be used for payroll-related purposes, and would be retained during employment and for three years thereafter. R. 101-17. By signing, an employee consented to El Milagro's collection, use, and disclosure of the employee's biometric identifier and information.

*Id*. The English-language Consent Form initially referred to the biometric identifier as a "handprint," while the Spanish-language form referred to "fingerprints." R. 111-1 ¶¶ 54, 56. In 2021, Defendant changed "handprint" to "fingerprint" on the English-language Consent Form; otherwise, the Consent Forms have not changed. *Id*. ¶ 54.

Plaintiff Chavez acknowledged signing the Spanish-language consent form. *Id*. ¶ 61. Plaintiff Castro testified at her deposition that she signed a document concerning the use of her fingerprint for El Milagro's timekeeping system. R. 101-4 at 15, 21. She recalled that her supervisor told her "that El Milagro had already decided that we were punching in with digital fingerprint" and that she signed the form related to biometric timekeeping after her supervisor told her that she had to sign it. *Id*. at 22–23, 26. Defendant was unable to locate Plaintiff Castro's signed form.

## Discussion[2]

### I. HP-2000

BIPA regulates the collection and use of "biometric information" and "biometric identifiers." A "biometric identifier" includes a fingerprint, retina or iris scan, voiceprint, or, relevant here, "scan[s] of hand . . . geometry." 740 ILCS 14/10. "Biometric information" is information "based on an individual's biometric identifier used to identify an individual." *Id.*

[2] The Court notes Plaintiffs' objections to portions of the declaration of Hortencia Calderon and Defendant's objections to the opinions of Plaintiffs' expert, Joseph Caruso. Because the Court's ruling does not depend on either piece of challenged evidence, the Court need not resolve those disputes.

Defendant contends that summary judgment is warranted because the HP-2000 "is incapable of identifying an individual" and therefore did not capture or collect biometric identifiers or information. R. 103 at 2. Defendant emphasizes that the HP-2000 cannot independently determine whose hand is presented. *Id.* Rather, an employee enters a User ID, and the machine scans the employee's hand geometry to determine whether the resulting template matches the template associated with that ID. *Id.* According to Defendant, because the HP-2000 can determine only whether a scan matches the template associated with an entered User ID, it cannot identify a person as required by BIPA.[3] But that argument focuses too narrowly on what the HP-2000 could do on its own, rather than on whether the information it generated enabled Defendant to identify a person. Defendant's principal authority, *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024), does not support limiting the inquiry in that manner.

There, Meta created "face signatures"—abstract numerical representations derived from a face appearing in a picture—from photographs uploaded to Facebook. *Id.* at 1120. The plaintiff argued that the signatures constituted scans of face geometry and were thus biometric identifiers under BIPA. *Id.* The court disagreed, reasoning that to qualify as a "biometric identifier" under BIPA, something must be capable of being "used to identify a person in the proper context." *Id.* at 1124. In

---

[3] Plaintiffs dispute that a "biometric identifier" must itself be capable of identifying a person, arguing that a scan of hand geometry falls within the statutory definition regardless of its identifying capability. R. 111 at 5–13. The Court need not resolve that broader disagreement because Defendant's argument fails even assuming such a requirement.

determining whether the face signatures could be used to identify a person, the court considered whether Meta could use the information to determine the identity of the person depicted:

> Put differently, the [face signature] allows Meta only to identify that a particular image contains a face. But this does not mean that Meta can, from that face, identify a person. Nor do the coordinates within the photos that can map out the size of a person's face show that Meta can, from those coordinates, identify an unknown person.

*Id*. at 1126. Because Meta could not use the face signatures to identify people, the court held that face signatures were not biometric identifiers or information. *Id*.

Here, by contrast, the HP-2000 determined whether the hand presented matched the template associated with a particular User ID, and El Milagro paired that match determination with information in its possession to identify its workers.[4] Defendant's cited authorities do not require more, and courts in this District have recognized that biometric data may be identifying when used in conjunction with other information available to the defendant. *See, e.g.*, *Javid v. M.A.C. Cosms., Inc.*, No. 25 CV 11693, 2026 WL 1601454, at *5–6 (N.D. Ill. June 4, 2026); *Daichendt v. CVS Pharmacy, Inc.*, No. 22 CV 3318, 2023 WL 3559669, at *1–2 (N.D. Ill. May 4, 2023); *Castelaz v. Estée Lauder Cos., Inc.*, No. 22 CV 5713, 2024 WL 136872, at *7

[4] Indeed, preventing "buddy punching" was one reason Defendant selected the system and achieving that objective necessarily required that Defendant knew who was clocking in for a shift.

(N.D. Ill. Jan. 10, 2024). Accordingly, Defendant's motion for summary judgment as to the HP-2000 is denied.[5]

## II. InTouch 9100

Defendant seeks summary judgment as to the InTouch 9100, arguing that its biometric policy complied with § 15(a), that Plaintiffs consented to the collection and disclosure of their fingerprint data under §§ 15(b) and 15(d), and that Defendant never possessed the biometric data generated by the device. Because the Court agrees with Defendant as to the policy and consent issues, it need not reach Defendant's possession argument.[6]

### A. Section 15(a)

Section 15(a) requires a private entity in possession of biometric identifiers or biometric information to "develop a written policy . . . establishing a retention schedule and guidelines for permanently destroying" that data. 740 ILCS 14/15(a). Defendant argues that its policy satisfied those requirements because it established retention and destruction rules applicable to employees' biometric identifiers and information. The Policy provided that "biometric identifiers and information" would be retained for three years after employment and then destroyed.

---

[5] The Court separately addresses Defendant's challenge to "per-scan" damages below in Section III.

[6] Plaintiffs concede that "there is no evidence to support BIPA violations under Section 15(c)." R. 111 at 2. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiffs' § 15(c) claim.

Plaintiffs contend that the Policy was deficient because it inaccurately described the biometric technology Defendant used. The Policy stated that Defendant had implemented a "fingerprint system," but later identified the biometric identifier used by that system as a "handprint." Plaintiffs argue that this inaccuracy creates a factual dispute as to whether Defendant maintained a policy governing the fingerprint data collected through the InTouch 9100.

Plaintiffs are correct that the Policy inconsistently described the particular biometric identifier at issue, but that inconsistency does not create a material dispute under § 15(a). Section 15(a) requires a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information; it does not separately require the policy to identify the particular biometric modality covered. 740 ILCS 14/15(a). Here, the Policy's operative retention and destruction provisions apply broadly to all "biometric identifiers and information." Thus, although the Policy elsewhere misidentified the type of biometric collected, that misstatement did not alter the scope of its retention or destruction requirements, which applied equally to fingerprint data generated through the InTouch 9100.

Plaintiffs identify no evidence that the InTouch 9100 data was subject to different retention or destruction rules or that Defendant failed to comply with those provisions.[7] Accordingly, the Policy's inconsistent description of the biometric

[7] Plaintiffs also contend that the differing English- and Spanish-language versions create a factual dispute as to which policy Defendant actually implemented. R. 111 at 18–19. That dispute is likewise immaterial. Both versions imposed the same

identifier does not establish a violation of § 15(a) or create a genuine dispute of material fact, and Defendant is entitled to summary judgment on that claim.

**B. Sections 15(b) and 15(d)**

Defendant argues that it is entitled to summary judgment under §§ 15(b) and 15(d) because it obtained Plaintiffs' consent before they began using the InTouch 9100. Section 15(b) prohibits a private entity from collecting biometric identifiers or biometric information unless, among other things, it "receives a written release executed by the subject." 740 ILCS 14/15(b). Section 15(d), in turn, permits disclosure of biometric data where "the subject of the biometric identifier or biometric information . . . consents to the disclosure or redisclosure." 740 ILCS 14/15(d)(1). Plaintiffs do not challenge the substance of the Consent Form under either provision. Instead, because Defendant was unable to locate Plaintiff Castro's release, Plaintiffs dispute whether Plaintiff Castro consented.[8]

The record does not support Plaintiffs' contention. At her deposition, Plaintiff Castro repeatedly testified that she signed a document concerning her consent to the use of her fingerprint for El Milagro's timekeeping system. Nothing in the record suggests that she was describing a different biometric consent form—to the contrary, it is undisputed that Defendant used only one Spanish-language biometric Consent

---

retention schedule and destruction requirements on "biometric identifiers and information" generally. Thus, regardless of which version governed, fingerprint data generated through the InTouch 9100 was subject to the same § 15(a) retention and destruction provisions.

[8] Plaintiffs concede that Plaintiff Chavez received and signed the consent form. Accordingly, Plaintiff Chavez's claims under §§ 15(b) and 15(d) concerning the InTouch 9100 fail as a matter of law.

Form, and Castro testified that she executed Spanish-language documents during her employment. Although Castro did not recognize the consent form at her deposition, her inability to recognize it does not contradict her repeated and detailed testimony that she signed a consent form concerning El Milagro's use of her fingerprint for timekeeping.

Finally, Plaintiffs rely on their responses to Defendant's requests for admission, in which they declined to admit that they consented before using any biometric timeclock. R. 111 at 16–17. But Rule 36 responses remain subject to the rules of evidence, and an admission falls outside the hearsay rule under Rule 801(d)(2) only when offered against the party who made it. *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 726 (7th Cir. 1996). Plaintiffs therefore cannot rely on their own Rule 36 responses as admissions against Defendant.

Defendant's inability to locate the executed copy does not create a genuine dispute as to whether Castro signed the form. The record therefore does not permit a reasonable finding that either Plaintiff used the InTouch 9100 without first executing Defendant's biometric consent form. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiffs' §§ 15(b) and 15(d) claims arising from the InTouch 9100.

### III. Per-Scan Damages

Defendant seeks partial summary judgment on damages, arguing that Plaintiffs may not recover statutory damages on a "per-scan" basis. Since briefing on this motion closed, the Seventh Circuit held in *Clay v. Union Pac. R.R. Co.,* 171 F.4th

975, 985 (7th Cir. 2026), that Public Act 103-0769—which amended § 20 of BIPA to limit recovery for repeated violations of §§ 15(b) and 15(d)—applies retroactively to pending cases. Accordingly, Defendant's motion is granted insofar as it seeks a determination that Plaintiffs may not obtain per-scan statutory damages under §§ 20(b) or 20(c).

## CONCLUSION

For the foregoing reasons, Defendant's motion is denied as to the HP-2000 claims, except as to Plaintiffs' § 15(c) claim; granted as to the InTouch 9100 claims and granted insofar as Defendant seeks to preclude per-scan statutory damages under §§ 20(b) and 20(c).

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: September 30, 2026