UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACINTA CASTRO AND SERAPIO CHAVEZ, INDIVIDUALLY AND ON BEHALF OF THEMSELVES AND OTHER SIMILARLY SITUATED PERSONS, KNOWN AND UNKNOWN,<br><br>Plaintiffs,<br><br>v.<br><br>EL MILAGRO, INC.,<br><br>Defendant. | No. 1:22-cv-03943<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jacinta Castro and Serapio Chavez ("Plaintiffs") bring this putative class action against Defendant El Milagro, Inc. ("El Milagro" or "Defendant") alleging that Defendant's timekeeping practices violated Illinois' Biometric Information Privacy Act ("BIPA"). Before the Court is Plaintiffs' motion for class certification. For the reasons set forth below, the Court grants the motion in part and denies it in part.

**Legal Standard**

To be certified, a putative class must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). The action also must satisfy at least one of the three subsections of Rule 23(b). *Id.* Here, plaintiffs seek certification under Rule 23(b)(3), which requires a finding that "questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

"Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements." *Messner*, 669 F.3d at 811. "The Rule does not set forth a mere pleading standard"; rather, the plaintiff must satisfy Rule 23 "through evidentiary proof." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013). "It is sufficient if each disputed requirement has been proven by a preponderance of the evidence." *Messner*, 669 F.3d at 811. "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Comcast*, 569 U.S. at 33-34 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011)). But "[m]erits questions may be considered . . . only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013).

District courts have "broad discretion" when determining whether a proposed class satisfies Rule 23. *Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 528 (7th Cir. 2012); *see also Dukes,* 564 U.S. at 369 ("[M]ost issues arising under Rule 23 . . . [are] committed in the first instance to the discretion of the district court.").

## Background

This class action alleges BIPA violations arising from Defendant's use of two biometric timekeeping systems at its Illinois facilities: the HP-2000 HandPunch timeclock ("HP 2000") and the ADP InTouch 9100 fingerprint timeclock ("InTouch 9100"). Defendant used the HP-2000 from approximately 2004 until April 2020. To

use the HP-2000, an employee entered an assigned identification number and placed a hand on the device. The HP-2000 generated a template from the employee's hand and compared it against the template associated with that identification number to determine whether the employee could clock in or out.

Defendant did not implement a written biometric privacy policy and consent process until 2019. Plaintiffs Castro and Chavez both used the HP-2000 before that process was implemented. Defendant thereafter transitioned its employees to the InTouch 9100 fingerprint timeclock in April 2020.

Plaintiffs allege that Defendant violated BIPA Sections 15(a), (b) and (d) by collecting, improperly retaining, and disseminating their biometric data without complying with BIPA's policy and consent requirements. Plaintiffs seek to certify two classes: Class A comprised of users of the HP-2000, and Class B for users of the InTouch 9100. The Court previously granted summary judgment to Defendant on Plaintiffs' claims arising from the InTouch 9100. Because neither named Plaintiff has a surviving claim arising from that system, the Court denies certification of Class B.

The remaining class, Class A, is defined as:

> All individuals whose biometric information or biometric identifiers were collected, captured, improperly retained, or otherwise obtained without consent by Defendant or its agent(s) using an HP-2000 timeclock in Illinois at any time between June 4, 2017 and the date of certification.

The Court analyzes Class A's suitability for class treatment under the guidelines established by Federal Rule of Civil Procedure 23.

## Discussion[1]

### I. Class Scope

As a threshold matter, Defendant argues that Class A is an impermissible "fail-safe" class—that is, a class "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) (citing *Messner*, 669 F.3d at 825. Defendant identifies three purported defects in the proposed definition: its references to "improper retention," collection "without consent," and "Defendant's agents." The Court agrees that these terms render the proposed definition impermissibly fail-safe. But that conclusion does not require denial of certification. *See Messner*, 669 F.3d at 825 (recognizing that fail-safe problems "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis"); *see also Scott v. Dart*, 99 F.4th 1076, 1093 (7th Cir. 2024) (explaining that where defects in a class definition do not undermine the validity of the class as a whole, "the better course is not to deny class certification entirely but to amend the class definition as needed").

As such, the Court adopts the following definition for Class A:

> All individuals, excluding Defendant's Officers and Directors, who used an HP-2000 timeclock at Defendant's Illinois facilities at any time between June

[1] The Court notes Defendant's objection to the opinions of Plaintiffs' expert, Joseph Caruso and Plaintiff's objections to various declarations submitted by Defendant. Because the Court's ruling does not require consideration of that evidence, the Court need not presently resolve these disputes.

4, 2017, and the date of certification.

This revised definition eliminates the challenged terms and makes class membership turn on objective criteria, thus resolving Defendant's fail-safe objections while preserving the substance of Plaintiffs' claims.[2] With the class definition clarified, the Court turns to whether Class A satisfies the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation.[3]

## II. Rule 23(a) Requirements

### A. Numerosity

[2] Defendant separately argues that Class A is overbroad because it includes individuals who consented to the collection and retention of their biometric information and therefore suffered no injury. The record, however, indicates that such individuals comprise only a limited portion of Class A, and their identities can be determined from Defendant's employment and consent records. Their inclusion therefore does not warrant denial of certification.

[3] The Court has also considered whether CAFA's home-state exception, 28 U.S.C. § 1332(d)(4)(B), bears on its exercise of jurisdiction. Although neither party has raised the issue, the Seventh Circuit has recognized that a court may raise CAFA abstention sua sponte. *See Page v. Alliant Credit Union*, 52 F.4th 340, 344 (7th Cir. 2022). The issue warrants consideration here because the proposed classes are limited to individuals whose biometric information was collected in Illinois and Defendant is an Illinois citizen. But the present record does not establish that two-thirds or more of the proposed class members are Illinois citizens. The fact that class members worked—and may reside—in Illinois does not establish citizenship for diversity purposes. *See id.* at 344–45; *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014) ("[C]itizenship differs from residence."). In any event, this case has been litigated in federal court for several years, and neither party has invoked the home-state exception. Because § 1332(d)(4) is a nonjurisdictional abstention provision and the party relying on the exception bears the burden of establishing it, the Court need not pursue the issue sua sponte at this late stage. *See Creason v. Elanco US Inc.*, 180 F.4th 911, 913–14 (7th Cir. 2026) (affirming denial of belated request for remand and explaining that, once litigation is "well under way in federal court," the district court

The numerosity requirement of Rule 23(a)(1) is satisfied where joinder of all putative class members is "impracticable." *McCabe v. Crawford & Co.*, , 643 (N.D. Ill. 2002). "[A] class of forty is generally sufficient." *Id.* Class A consists of approximately 1,542 individuals.[4] Defendant does not contest that the numerosity requirement is satisfied here. Accordingly, the Court finds the proposed class sufficiently numerous to render joinder impracticable.

**B. Commonality**

Commonality requires Plaintiffs to demonstrate that the putative class members' "claims . . . depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 350.

Plaintiffs assert that Defendant's conduct was standard, uniform, and systematic as to each employee who used the HP-2000 in Illinois. In support, Plaintiffs point to evidence that employees were registered in the same manner and used the HP-2000 in the same way—entering their employee number and providing

---

is entitled to see it through to decision). The Court therefore is satisfied that it may exercise jurisdiction over this action.

[4] Defendant's records identify approximately 600 individuals who used only the HP-2000 and approximately 942 additional individuals who used both the HP-2000 and the InTouch 9100, yielding an approximate Class A population of 1,542 individuals. While that figure includes some individuals who may have first used the HP-2000 only after executing Defendant's biometric consent form in 2019, the potential presence of a comparatively small number of such individuals does not affect the Court's conclusion that joinder is impracticable.

a hand scan to record their time. Plaintiffs argue that this common course of conduct presents questions capable of classwide resolution, including whether the hand scans constitute biometric identifiers or information under BIPA and, if so, whether Defendant obtained the consent required by the statute.

The Court agrees that the practice challenged by Class A was sufficiently standardized to present common questions of law and fact. Defendant's contrary arguments have largely been addressed by the refinement of the class definition and this Court's prior summary judgment order.

Defendant raises arguments concerning individualized use, res judicata, and consent that are directed principally at the InTouch 9100 class, which is no longer a part of the case. Defendant's remaining contention that affirmative defenses such as waiver, assumption of risk, consent, and failure to mitigate will reduce the case to a series of individualized inquiries is also unpersuasive. In *Svoboda v. Amazon.com, Inc.*, a decision issued after briefing on this motion closed, the Seventh Circuit considered substantially similar arguments in a BIPA class action. 168 F.4th 956, 965–66 (7th Cir. 2026). There, Amazon argued, among other things, that a class member who understood that biometric data was being collected but nevertheless chose to use the challenged technology should be barred from recovery by consent, failure to mitigate, estoppel, or waiver. *Id.* at 965. The Seventh Circuit concluded that even if those defenses were applicable, they did not defeat class certification. The Court observed that such defenses were "ancillary to the central question—liability—and can be handled at a separate phase of litigation." *Id.* at 965–66. The same

reasoning applies here. Resolution of this matter turns predominantly on a common core of questions concerning Defendant's use of the HP-2000 and its compliance with BIPA. The possibility that certain affirmative defenses or damages issues may require individualized consideration does not overcome those common questions. *See id.* at 966 ("Even if individual questions about the remaining defenses and damages remain, they do not defeat class certification, particularly where other common questions predominate.").[5]

### C. Typicality

"A claim is typical if it [1] arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [2] [the] claims are based on the same legal theory." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). Applied to Class A, typicality therefore turns on whether the proposed class representatives used the HP-2000 during the class period and challenge that use on the same legal grounds as the remainder of the class—namely, that Defendant

---

[5] Moreover, courts have routinely found commonality in similar BIPA class actions. *See Gunderson v. Amazon.com, Inc.*, 350 F.R.D. 376, 383 (N.D. Ill. 2025) (finding commonality satisfied where Amazon allegedly "sold, leased, traded, or otherwise profited from Plaintiff's biometric data"); *Howe v. Speedway LLC*, No. 19 C 1374, 2024 WL 4346631, at *15 (N.D. Ill. Sept. 29, 2024) (finding commonality where a common question included whether Speedway's timeclocks "collected, captured, or otherwise obtained . . . protected biometrics under BIPA section 15(b)"); *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 WL 854348, at *2 (N.D. Ill. Mar. 22, 2022) (finding commonality where BNSF collected biometric data in a standardized manner upon a driver's visit to a BNSF facility); *Gaertner v. Commemorative Brands, Inc.*, 351 F.R.D. 201, 215 (S.D. Ill. 2026) (finding commonality where, "the record reflects that GradImages follows a standardized process by which it photographed students and, allegedly, used their biometric data to facilitate marketing of those photographs.").

improperly collected, retained or disseminated biometric identifiers or information without the consent or policy required by BIPA.

Defendant argues that Plaintiffs' claims are atypical because both ultimately signed biometric consent forms. But both Plaintiffs used the HP-2000 before Defendant implemented its consent process in 2019. Thus, there is no meaningful difference between Plaintiffs' theory of liability and that of the putative class: each alleges that Defendant collected biometric data through the HP-2000 before obtaining the consent required by BIPA. Accordingly, the Court finds Plaintiffs' claims typical of Class A.[6]

**D. Adequacy**

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement principally concerns whether the named plaintiffs have interests antagonistic to those of the class and are capable of adequately prosecuting the action. *Rosario v.*

---

[6] Defendant also argues that Castro is atypical because she testified that she experienced emotional distress concerning the collection of her biometric information. But Defendant mistakes evidence of Castro's subjective reaction to the alleged violation for a separate damages claim. Plaintiffs' Rule 26 disclosures seek statutory damages, and Plaintiffs confirm in reply that Castro does not seek recovery for emotional distress. R. 117 at 15. Thus, Defendant's contention that Castro will be incentivized to focus on proving individualized actual damages rests on a premise Plaintiffs expressly disclaim. In any event, Castro's alleged distress does not alter the conduct giving rise to her claim or the legal theory on which liability rests.

*Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Defendant first argues that Plaintiffs cannot adequately represent the class because the proposed class includes employees whose own conduct may be implicated by Plaintiffs' claims. On the present record, however, Defendant has not established an actual conflict. Defendant identifies four categories of employees whose conduct it contends creates a conflict: Human Resources employees who drafted and administered Defendant's biometric policy and consent forms; Plaintiff Castro herself, who assisted with enrolling employees in Defendant's timekeeping systems; the supervisor who allegedly told Castro that she could be terminated if she refused to sign a consent form; and information-technology personnel allegedly responsible for the retention or destruction of biometric data. The first three do not present a conflict. The Human Resources employees identified conduct concerns the adoption and administration of Defendant's policy and consent procedures beginning in 2019, rather than the alleged collection of HP-2000 data before those procedures existed. Similarly, Defendant's examples concerning Castro and her supervisor relate principally to implementation of the later consent and fingerprint-timekeeping process. Those actions do not form the basis of the surviving HP-2000 violations

alleged by Plaintiffs, which concern Defendant's earlier collection of HP-2000 data and its subsequent retention and dissemination of that data.[7]

Defendant's argument concerning employees allegedly responsible for destruction of biometric information presents a potentially different issue. If the evidence establishes that a class member personally bore responsibility for conduct that forms the basis of the class's Section 15(a) claim, an actual conflict may arise. Defendant, however, has not established such a conflict on the present record. The Court therefore declines to exclude additional employees on that basis at this time. A class-certification order may be altered or amended before final judgment, Fed. R. Civ. P. 23(c)(1)(C), and the Court remains free to modify the class definition if subsequent factual development demonstrates that a particular employee or category of employees has interests antagonistic to those of the class. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("[T]he obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B)."); *Kainz v. Illinois Dep't of Corr.*, No. 1:21-CV-01250-JEH-RLH, 2026 WL 674191, at *3 (C.D. Ill. Mar. 10, 2026) (refining the class definition to exclude executive employees in addressing potential intra-class conflicts); *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 596

---

[7] The presence of a Section 15(a) claim does not alter that conclusion. Plaintiffs' Section 15(a) theory concerning the HP-2000 rests principally on Defendant's failure to maintain a biometric policy before 2019 and its alleged failure to comply with applicable retention and destruction requirements for previously collected HP-2000 data. Thus, Plaintiffs need not establish that the employees who later helped draft or administer the 2019 policy themselves engaged in wrongful conduct to prevail on that claim.

(7th Cir. 2021) (noting that the district court excluded supervisory employees because their own alleged wrongdoing might become an issue in the litigation).

Defendant also argues that Plaintiffs lack sufficient knowledge of this lawsuit to serve as adequate representatives. Rule 23 places only a "modest burden" on named plaintiffs to demonstrate "an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Acosta v. Bd. of Trs. of Unite Here Health*, 779 F. Supp. 3d 974, 997 (N.D. Ill. 2025) (internal quotation marks omitted). That burden is "not difficult." *Id.*

Defendant cites portions of Plaintiffs' depositions in which they stated that they had not reviewed the Complaint, could not identify their attorneys by name, or did not precisely describe the legal claims asserted. The Court is unpersuaded that these deficiencies render them inadequate. The record reflects that both Plaintiffs understand the basic subject matter of the litigation. When asked what the lawsuit was about, Castro responded, "the digital fingerprint . . . punching in and out under the digital fingerprint, some of us were not in agreement." R. 157-4 at 7. Chavez similarly testified that "they would make us punch in with our—with our fingerprint." Although those descriptions do not distinguish between the two timekeeping systems at issue in this litigation, Rule 23(a)(4) does not require a named plaintiff to articulate the technical or legal distinctions underlying the claims. Both Plaintiffs demonstrated an understanding that the lawsuit concerns Defendant's use of biometric timekeeping technology and the collection of employees' biometric information, and both participated extensively in discovery concerning those

practices. *See generally* R. 101-4; R. 101-5. That is sufficient under the "modest" adequacy standard. *See Acosta*, 779 F. Supp. 3d at 997.

Finally, no party challenges the qualifications of proposed class counsel. Having considered counsel's work investigating and prosecuting this action, their experience litigating class actions, and the other considerations identified in Rule 23(g)(1), the Court finds that Plaintiffs' counsel will fairly and adequately represent the interests of the class. *See* R. 95-8; Fed. R. Civ. P. 23(g).

## III. Rule 23(b)(3) Requirements

Plaintiffs seek certification under Rule 23(b)(3). This means that in addition to the Rule 23(a) requirements, plaintiffs also must show that "[1] questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court addresses each of these factors in turn.

### A. Predominance

"There is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814. "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Id.* at 815. "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Section 15(a) requires a private entity

in possession of biometric identifiers or information to develop and make publicly available a written retention and destruction policy and to comply with its retention schedule and destruction guidelines. 740 ILCS 14/15(a). Section 15(b) prohibits a private entity from collecting, capturing, or otherwise obtaining biometric identifiers or information without first providing the required disclosures and obtaining a written release. 740 ILCS 14/15(b). Section 15(d) prohibits a private entity in possession of biometric identifiers or information from disclosing, redisclosing, or otherwise disseminating that information absent consent or another statutory authorization. 740 ILCS 14/15(d).

The Court agrees with Plaintiffs that common questions predominate by the nature of the claims at issue. Defendant uniformly required employees to use the HP-2000, and employees registered for and used the device in materially the same manner. R. 95 at 25. Most significantly, whether the information generated by the HP-2000 constitutes a "biometric identifier" or "biometric information" under BIPA is a common question on which each class member's claim depends. A failure of proof on that question would resolve the claims of the entire class. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

The remaining liability questions are likewise predominantly common. As to Section 15(a), the relevant questions concern Defendant's policy and its retention and destruction practices governing HP-2000 data. As to Section 15(b), whether Defendant collected HP-2000 biometric data before providing the required notice and obtaining written consent turns largely on Defendant's uniform collection practices

and consent procedures. And as to Section 15(d), whether Defendant disclosed HP-2000 biometric data to a third party, and whether such disclosure was authorized, likewise turns predominantly on evidence concerning Defendant's practices. The same evidence therefore will resolve the principal liability questions for the class as a whole. Having considered and rejected Defendant's contrary arguments, *see supra* Section II.B, the Court finds predominance satisfied and notes that this conclusion is consistent with numerous other BIPA class actions. *See Svoboda, Inc.*, 168 F.4th at 965–66; *Howe*, 2024 WL at *17–18; *Rogers*, 2022 WL at *3; *Gunderson*, 350 F.R.D. at 392; *Gaertner*, 351 F.R.D. at 221.

**B. Superiority**

"Rule 23(b)(3)'s superiority requirement . . . is comparative: the court must assess efficiency [of a class action] with an eye toward other available methods." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). Relevant considerations include the class members' interests in individually controlling separate actions, existing litigation concerning the controversy, the desirability of concentrating the litigation in a particular forum, and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

The Court finds that a class action is superior to other available methods of adjudicating this controversy. The central issues concern Defendant's uniform use of the HP-2000 and its compliance with BIPA's collection, retention, and disclosure requirements. Resolving those issues once on a classwide basis will avoid duplicative litigation and promote consistent results. And, for the reasons discussed above, the

Court rejects Defendant's argument that individualized issues as to damages and affirmative defenses will render the class unmanageable. *See Svoboda v. Amazon.com, Inc.*, 168 F.4th 956, 968–70 (7th Cir. 2026).

Defendant also argues that the availability of substantial statutory damages makes individual litigation preferable and that the potential aggregate award would create undue settlement pressure. Neither argument defeats superiority. The potential class size of individual or aggregate BIPA damages, standing alone, does not render class treatment inferior. *Id.* Moreover, Defendant's damages calculations were premised on a per-scan theory under which a single employee might recover millions of dollars in statutory damages. The Court previously ruled that such per-scan damages were not permissible under BIPA. *See* R.133 (Citing *Clay v. Union Pac. R.R. Co.*, 171 F.4th 975, 985 (7th Cir. 2026)). Thus, the premise of Defendant's primary superiority argument no longer applies. Accordingly, Plaintiffs have satisfied Rule 23(b)(3)'s superiority requirement.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for class certification. The motion is denied as to Class B and granted as to Class A, as modified by the Court. Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court certifies the following class:

> All individuals, excluding Defendant's officers and directors, who used an HP-2000 timeclock at Defendant's Illinois facilities at any time between June 4, 2017, and the date of certification.

The claims certified for class treatment are Plaintiffs' claims under Sections 15(a), 15(b), and 15(d) of BIPA arising from Defendant's use of the HP-2000, including its alleged collection, improper retention, and dissemination of biometric identifiers or information.

The Court appoints Jacinta Castro and Serapio Chavez as class representatives and appoints Plaintiffs' counsel as class counsel pursuant to Rule 23(g). The parties shall confer regarding notice to the class and submit a proposed form and plan of notice consistent with Rule 23(c)(2)(B) within fourteen days of this Order.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: November 10, 2026